The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and defendant-employer.
3. Defendant-employer is self-insured with Key Risk Management Services as the servicing agent.
4. Plaintiff's average weekly wage is sufficient to generate the maximum compensation rate in 1993.
5. Plaintiff suffered an injury by accident on May 1, 1993, resulting in an injury to the lower back, neck, ribs, hands, thereby causing dizziness and numbness.
6. The defendant-employer admitted liability and certain benefits were paid.
7. The issues to be determined by the Commission are: (1) what is the extent of plaintiff's disability, (2) should the unauthorized medical treatment be approved.
* * * * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following
FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was 34 years old with a date of birth of 6 August 1960. Plaintiff has work experience as a truck driver, and at the time of his injury, plaintiff was working with the defendant-employer as a truck driver.
2. On 1 May 1993, plaintiff was performing his duties as a truck driver for defendant-employer. After plaintiff had connected a trailer to his tractor/truck, plaintiff got back into his truck cab. As plaintiff eased off of the clutch, the truck suddenly "jumped" causing plaintiff's body to be thrown about in the cab of the truck. Plaintiff's head struck the radio in the truck cab.
3. The defendant-employer accepts liability for the accident that occurred on 1 May 1993, but disputes the extent, if any, of plaintiff's resulting disability from this injury by accident. The defendant-employer did not enter into a Form 21 agreement, but paid 14 weeks of temporary-total disability benefits for the periods of May 6, 1993 through July 28, 1993 and August 5, 1993 through August 18, 1993.
4. On 1 May 1993, plaintiff was treated at the North Carolina Baptist Hospital Emergency Room. Plaintiff's history relayed to the emergency room physician was as follows: "32 year old white male complains of headache and pain in the neck. Inflection of neck when driving — head hit radio when 18-wheel truck `jumped'? No loss of consciousness today. Gear shift struck right flank — but no complaints of pain in that area." The diagnosis of the emergency room doctor was cervical strain.
5. The defendant-employer referred plaintiff to its company doctor, a chiropractor, Dr. Gary McKeel. Plaintiff was first examined by Dr. McKeel on 4 May 1993, and was conservatively treated through 17 May 1993. Plaintiff's complaints of pain to Dr. McKeel were of soreness and stiffness in the cervical area.
6. Plaintiff, without approval of employer, saw Dr. Monte Hunter, an orthopedist at the Bowman Gray School of Medicine. The defendant-employer paid Dr. Hunter's medical bills, and has no objections to approval of Dr. Hunter as an authorized physician. Plaintiff's complaints to Dr. Hunter were of continued stiffness in his neck that occasionally radiated to his shoulders, with reports of occasional episodes of pain radiating down his arms with intermittent episodes of tingling in his arms and hands. Plaintiff denied any loss of motor control of his hand. Also, plaintiff complained to Dr. Hunter of "global-type headaches" which began 5 to 6 days after the injury.
7. Dr. Hunter recommended an MRI scan, which revealed no bony or ligamentous injury per Dr. Hunter's office note of 24 May 1993. The MRI also showed no evidence of disc herniation or foraminal stenosis. The MRI was normal. As of 24 May 1993, Dr. Hunter's diagnosis was cervical strain and post-concussion syndrome.
8. Plaintiff was next referred to Dr. John R. Absher, a neurologist. The defendant-employer did not authorize Dr. Absher's treatment of plaintiff. Plaintiff's primary complaints to Dr. Absher were of tingling in his right arm to his fingertips, and plaintiff also claimed to have tinnitus bilateral, which had worsened over the past few weeks. Plaintiff also complained of a crackling in the back of his neck, which would cause his arms to drop and make him feel like he would lose consciousness. Plaintiff also mentioned to Dr. Absher mild lower back pain, but Dr. Absher noted that this complaint tended to come and go with no exacerbating circumstances. Dr. Absher's neurological and sensory exam of plaintiff were well within normal limits. Dr. Absher noted that plaintiff had no muscle spasms or cervical spasms and that plaintiff was able to bend over and touch his toes with a normal back motion. Dr. Absher's impression was possible post-traumatic migraine variant, possible vertebral artery dissection, and lower back pain which was uncomplicated. Dr. Absher recommended a cerebral angiogram on plaintiff to rule out a vertebral artery dissection, which was performed on 17 June 1993. The cerebral arteriogram was normal.
9. The defendant-employer referred plaintiff to Dr. Frank Crowell, a neurologist. On 9 August 1993, Dr. Crowell examined plaintiff for his complaints of post-traumatic headaches, dizziness, blurred vision, blackouts, and pain in the arms, legs, and spine. Plaintiff's complaints of spinal pain were focused upon the cervical area. Plaintiff did not mention to Dr. Crowell his having any low back pain. Dr. Crowell's examination of plaintiff was normal. An EEG was performed which was normal. Dr. Crowell recommended physical therapy, which the defendant-employer authorized. A Functional Capacity Evaluation was ordered by Dr. Crowell, and the Functional Evaluation indicated that plaintiff had positive symptom magnification, and that plaintiff could perform light medium work with lifting up to 35 pounds on an occasional basis, and lifting 15 pounds on a frequent basis, and lifting 7 pounds on a constant basis. Dr. Crowell testified in his deposition that plaintiff was hostile and expressed anger towards him and the rehabilitation nurse, Patricia Lewis. Dr. Crowell was also of the opinion that plaintiff embellished his symptoms of pain.
10. Dr. Crowell found that plaintiff was able to return to work as of 17 August 1993.
11. Plaintiff was next seen by Dr. Leon Grobler, an orthopedic specialist with the Bowman Gray School of Medicine. Dr. Grobler examined plaintiff on 26 October 1993. This examination was not authorized by the defendant-employer. Plaintiff did not have any complaints of low back pain, but only complained of neck pain and headaches. Dr. Grobler's examination showed a well-developed, well-nourished Caucasian male, with range of motion of the neck slightly limited. No cervical spasms were noted by Dr. Grobler. The neurological exam and spurlings tests were normal. Dr. Grobler recommended a comprehensive functional restoration program, but the defendant-carrier denied paying for this service since they had previously authorized comprehensive rehabilitation and work hardening, and the plaintiff had refused to cooperate with said work hardening.
12. Plaintiff's attorney referred him to a psychiatrist, Dr. Roy Clemmons. Dr. Clemmons examined plaintiff on 1 December 1993. Based upon all of the other competent and convincing medical records of record, the undersigned give little weight or persuasion to Dr. Roy Clemmons' examination.
13. After seeing Dr. Clemmons in December of 1993, there was a considerable gap between plaintiff's next examination by a physician. Plaintiff reported to the Bowman Gray Family Clinic and was examined by Dr. Inam Rasid on 22 April 1994. For the first time, plaintiff gave a history of having complaints of low back pain for about one year radiating to both right and left legs. Plaintiff also reported that his legs had started giving way. Dr. Rasid's impression was chronic low back pain. There was not any mention of cervical strain or headaches to Dr. Rasid. Plaintiff continued to be treated by the Bowman Gray Family Medicine Center, and was also seen by Dr. Thomas Curtis, a doctor of osteopathy. Dr. Curtis' deposition was taken, and Dr. Curtis testified that it was difficult for him to render an opinion as to whether plaintiff's low back pain in 1994 was causally related to the 1 May 1993 accident. Dr. Curtis testified that anything could have caused the muscle pain which plaintiff was experiencing.
14. Dr. Curtis released plaintiff to light-duty work as of 16 August 1994. In Dr. Curtis' opinion, plaintiff was physically capable of performing light-duty work, such as the janitorial job that was offered by defendant-employer to plaintiff. The defendant-employer appeared at the hearing in this matter and made this job available to plaintiff, before the presence of the Deputy Commissioner. However, plaintiff did not return to work.
15. On 6 October 1994, Dr. Curtis reported in his office note that plaintiff was having almost "delusional" thoughts of his wife having extramarital affairs, which were resulting in episodes of rage. Dr. Curtis therefore referred plaintiff to Dr. Cindy Perry, a psychiatrist with the Bowman Gray School of Medicine. Dr. Perry testified that the exact cause of plaintiff's depression is unknown; however, plaintiff's obsession with thoughts of his wife having extramarital affairs, combined with his father's terminal illness, were significant contributing and aggravating factors to plaintiff's depression. In Dr. Perry's opinion, plaintiff's inability to work was in large part due to his obsession about the possibility of his wife having an extramarital affair.
16. Plaintiff returned to work on 22 February 1995 with the defendant-employer as a truck driver, earning the same wages that he earned prior to the injury by accident.
17. Objective tests from several physicians have shown results which were within normal limits. These include physical examinations, x-rays, MRI's, cerebral arteriogram, and an EEG.
18. In medical records, notations have been made that plaintiff is magnifying his symptoms and embellishing his complaints of pain, as well as exhibiting anger and hostility, demonstrating that his condition is "non-organic."
19. Plaintiff has given inconsistent and conflicting reports of pain to different areas of the body, which are neither consistent with the manner in which the 1 May 1993 accident occurred, nor consistent with any objective studies/tests.
20. The cervical strain to plaintiff's neck caused by the accident of 1 May 1993 did not cause him to be disabled after 17 August 1993, when he was released by Dr. Crowell.
21. Although not authorized, the undersigned find that the treatments rendered by Dr. John Absher, Dr. Leon Grobler, the Bowman Gray Family Medicine Clinic/Drs. Rasid and Curtis, Dr. Roy Clemmons, and Dr. Cindy Perry, at least, afforded plaintiff peace of mind and are hereby approved.
* * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. On 1 May 1993, plaintiff sustained an injury by accident out of and in the course of his employment with defendant-employer. G.S. § 97-2(6).
2. As a result of the accident of 1 May 1993, plaintiff was temporarily totally disabled from 1 May 1993 through 17 August 1993, when he was released by Dr. Crowell to return to work. G.S. § 97-29.
3. Since plaintiff is entitled to temporary total disability benefits for 15 4/7 weeks and defendants have already paid plaintiff temporary total disability benefits for 14 weeks, plaintiff is entitled to temporary total disability benefits for 1 4/7 weeks. G.S. § 97-29.
4. The treatments rendered by Dr. John Absher, Dr. Leon Grobler, Dr. Inam Rasid, Dr. Thomas Curtis, Dr. Cindy Perry, and Dr. Roy Clemmons did not afford a cure or relief to plaintiff's complaints of pain. However, they may have afforded plaintiff peace of mind and ARE HEREBY AUTHORIZED. G.S. § 97-25.
* * * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendants shall pay temporary total disability benefits to plaintiff at the rate of $442.00 per week for 1 4/7 weeks. This compensation has accrued and shall be paid to plaintiff in a lump sum subject to an attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of twenty-five (25) percent of the award is hereby approved for plaintiff's counsel. Said amount shall be deducted from therefore said award and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
IT IS FURTHER ORDERED that this case be REMOVED from the Full Commission hearing docket.
This the __________ day of ________________________, 1996.
 S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
S/ _______________________ DIANNE C. SELLERS COMMISSIONER
JHB/nwm 06/10/96